UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**FERMICHAEL HARRISON #324129**          **CASE NO. 6:18-CV-01631 SEC P**

**VERSUS**                               **JUDGE JUNEAU**

**DARRYL VANNOY**                        **MAGISTRATE JUDGE WHITEHURST**

### REPORT AND RECOMMENDATION

Pro se petitioner Fermichael Harrison, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, on December 17, 2018. [Rec. Doc. 1] Petitioner attacks his 2011 conviction for distribution of hydrocodone and the life sentence imposed thereon by the Fifteenth Judicial District Court, Vermilion Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

### *Background*

Fermichael Harrison sold a bag of Lortabs to an undercover narcotics officer in Abbeville in December 2008. *State v. Harrison*, 13-981 (La. App. 3 Cir. 02/12/14); 131 So.3d 1135. On April 13, 2010, the State filed a bill of information charging him with distribution of hydrocodone, a violation of La. R.S. 40:968. *Id.*

On July 12, 2011, a jury found him guilty as charged. *Id*. The trial court sentenced Harrison to five years at hard labor on August 18, 2011. *Id*.

Following the State's filing of new bills of information, the trial court conducted a habitual offender hearing and, on September 20, 2012, found Harrison to be a fourth habitual offender, sentencing him to life imprisonment. *Id*.

On or about September 24, 2013, Petitioner filed a direct appeal in the Third Circuit Court of Appeals, raising the following issues: (1) evidence adduced by the State did not support a fourth offender adjudication and (2) excessive sentence. [Rec. Doc. 6-1, pp. 15-28] On December 9, 2013, he filed a supplemental brief raising an additional claim, that potential jurors were systematically excluded on the basis of race. *Id*. at pp. 4-12. On February 12, 2014, the Third Circuit affirmed the sentence and conviction. *State v. Harrison, supra;* Rec. Doc. 6-1, pp. 38-50. Petitioner applied for writs of certiorari in the Louisiana Supreme Court, presumably raising the three issues raised in the lower courts, and on October 3, 2014, his writ application was denied. *State v. Harrison*, 2014-KO-0529 (La. 10/3/14), 149 So.3d 795; Rec. Doc. 6-1, p. 36. He did not apply for certiorari in the United States Supreme Court. [Rec. Doc. 1, p.3, ¶9(h)]

On June 2, 2015, Petitioner filed an Application for Post-Conviction Relief in the trial court, raising two issues: (1) appellate counsel was ineffective for not arguing that the evidence was insufficient to support his conviction; and (2) trial

2

counsel was ineffective for failing to file proper objections prior to the habitual offender adjudication. On July 1, 2015, the trial court denied the application. Petitioner sought writs in the Third Circuit Court of Appeal on July 31, 2015. The Third Circuit, in Docket Number KH 15-00729, granted and made peremptory in part, and denied in part, Petitioner's application for writ of review. [Rec. Doc. 6-1, p. 13] The claim that appellate counsel was ineffective for not arguing that the evidence was insufficient to support his conviction was remanded to the trial court for a ruling on the merits.

Petitioner applied for supervisory writs in the Louisiana Supreme Court, presumably on the claim that trial counsel was ineffective for failing to file proper objections prior to the habitual offender adjudication. On April 7, 2017, in Docket Number 2015-KH-2268, the Supreme Court denied his application. *State ex. rel. v. Harrison*, 2015-KH-2268 (La. 4/7/17), 215 So.3d 216; Rec. Doc. 6-1, p. 34.

In the meantime, the trial court appointed an attorney to assist Petitioner and on October 13, 2016, held an evidentiary hearing on the sufficiency of the evidence claim, pursuant to which it denied that claim, on the merits, in a written ruling dated November 22, 2016. [Rec. Doc. 6-1, pp. 1-3] On December 14, 2016, Petitioner filed an application for writ of review in the Third Circuit Court of Appeal, which was denied on May 9, 2017, Docket Number KH 16-1007. [Rec. Doc. 6-1, p. 14] The Louisiana Supreme Court denied Petitioner's application for supervisory writs

on October 8, 2018, *State ex. rel. v. Harrison*, 2017-KH-1172 (La. 10/8/18), 253 So.3d1286; Rec. Doc. 6-1, pp. 37.

Petitioner filed the instant petition on December 17, 2018, raising the following claims: (1) appellate counsel was ineffective in failing to argue the fact that the State's expert made no examination of the pills and, therefore, could not prove the substance of those pills or the elements of the crime charged; and (2) trial court erred by not striking the entire jury venire because persons were systematically excluded from the venire on the basis of race.

## *Law and Analysis*

**I.      Standard of Review - 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id*. A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (*citing Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also*, *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility

5

for fairminded disagreement." *Id. (citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam)(quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id.* (*citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam)(asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary but not sufficient to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id. (citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

6

**II. Claims**

**A. Ineffective Assistance of Counsel**

Harrison contends that appellate counsel, Carey Ellis, was ineffective for failing to argue the insufficiency of proof at trial that the substance distributed by him was Hydrocodone.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 687. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (*quoting Strickland*, 466 U.S. at 689) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

Denying relief on this claim, following an October 13, 2016 evidentiary hearing on Petitioner's Application for Post-Conviction Relief, the trial court found that appellate counsel advocated zealously for his client. [Rec. Doc. 11-13, pp. 69-71] Counsel testified that he prepared an appeal for Harrison based on three assignments of error. *Id*. He explained that he did not raise the issue of insufficiency of this evidence as to the state's failure to prove the identity of the drug possessed because Kevin Ardoin, expert witness, concluded that the drug was a Schedule III. *Id*. The expert relied on his prior experience and knowledge of Hydrocodone, the physical composition of the pill, such as the label, and the scientific literature he reviewed to base his opinion as to the identity of the pill. *Id*. The lab report in

8

evidence identified the drug as Hydrocodone, plus acetaminophen. *Id*. He further explained that the jury believed and accepted the testimony of the expert and the lab report and, as such, a claim for appeal on this issue did not exist. *Id*.

The trial court found that petitioner did not meet his burden of proving that his counsel's performance was deficient, as required by *Strickland*. [Rec. Doc. 11-13, p. 71] Therefore, the court held that appellate counsel's representation did not fall below the objective standard of reasonableness and he was not deficient in his performance as to prejudice the petitioner. *Id*. The Third Circuit and the Louisiana Supreme Court denied petitioner's application for writs. [Rec. Doc. 6-1, pp. 14, 37]

In this instance, the state court applied the appropriate legal standard for ineffective assistance of counsel claims. It's conclusion that appellate counsel's representation did not fall below the objective standard of reasonableness and that counsel was not deficient in his performance as to prejudice the petitioner has not been shown to be an unreasonable application of the law and therefore, Petitioner cannot prevail on this claim.

### B. Systematic Racial Exclusion from Jury Venire

Petitioner's second claim is that the trial court erred by not striking the entire jury venire because persons were systematically excluded from the venire on the basis of race.

The Sixth Amendment guarantees a criminal defendant the right to have his or her jury chosen from a venire or panel representing a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975). The *Taylor* Court arrived at this conclusion by recognizing that (1) "the Sixth Amendment's provision for jury trial is made binding on the States by virtue of the Fourteenth Amendment," *id*. at 526, (2) "the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community," *id*. at 527, and (3) the selection of a jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial. *Id*. at 528. Interestingly, the Supreme Court cited a long line of equal protection cases outlawing the purposeful exclusion of racial and ethnic groups from service on juries in support of its interpretation of the Sixth Amendment's fair cross-section requirements. *Moore v. Cain*, 2017 U.S. Dist. LEXIS 158970 (M.D. La. Sept. 7, 2017), *20-21. The Supreme Court also acknowledged that its holding in *Taylor* announced a new rule of constitutional criminal procedure. *Id*. at *21.

Notwithstanding the foregoing, the Supreme Court also emphasized that its construction of the Sixth Amendment does not deprive the States of the opportunity to determine appropriate qualifications for jurors or to grant exemptions from jury service in cases of special hardship or incapacity or to persons engaged in particular occupations whose uninterrupted performance of their duties is critical to the

community's welfare. *Id.* (*citing Taylor v. Louisiana*, *supra*, 419 U.S. at 538 ("States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community").

In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The Supreme Court has also repeatedly refused to extend the Sixth Amendment's fair cross-section requirement to the selection of a jury once a jury panel or venire has been constituted that does not run afoul of these requirements. *Moore, supra (citing Holland v. Illinois*, 493 U.S. 474, 486-87 (1990)) (holding the Sixth Amendment's fair cross-section requirement does not mirror the Equal Protection Clause's proscription against racial discrimination in the exercise of peremptory challenges); *Teague v. Lane*, 489 U.S. 288, 314-15 (1989) (recognizing the denial of the right to a fair cross-section of the community in a jury venire does not undermine the fundamental fairness that must underlie a criminal conviction); *Lockhart v. McCree*, 476 U.S. 162, 173 (1986) ("We have never

11

invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large").

Before voir dire questioning began on July 12, 2011, Harrison raised an objection to the composition of the venire and to the method of its selection. *See State v. Harrison*, 13-981 (La. App. 3 Cir. 02/12/14); 131 So.3d 1135, *7-8. A jury pool of more than one hundred and fifty individuals was called, but approximately half that number appeared. Twenty-one venire members were chosen to begin jury selection and the jury was selected from that group. Four of the twenty-one were African-American; three of these were removed via the State's peremptory challenges. The court heard testimony and argument on the objection after trial and ultimately denied relief:

| | |
|---|---|
| The Court: | If you could convince me that the state, the clerk of court, the registrar of voters, the State of Louisiana, the district attorney's office, does anything to prevent your client from getting a jury of his peers, then I would grant your motion, but you have not done that. |
| Defense Counsel: | I think that's where we most disagree. I'm not saying the state has to take an affirmative action to exclude any particular ethnic group and/or gender base. If the system which is used is flawed, and that's – |
| Court: | But that's chosen by the state, sir. |
| Defense: | Well, but we're saying that the system itself -- not that the state is taking any affirmative action, just that the system that is being used at this particular time -- and in particular |

12

>here in Vermilion Parish; I'm not sure what's going on in other parishes -- is flawed; and if that flawed system leads to a systematic exclusion, which can occur and has occurred here over time, we've met that third prong.
>And, once we meet that third prong, it then falls upon the state. And what it says is that: After defendant makes a prima fascia [sic] case, the state has the burden of justifying this infringement by showing that the achievement of a fair cross section is incompatible with a significant state interest. They haven't done that. They think it's impractical, they state it's impossible, but they haven't shown where it's an infringement upon a significant state interest. And I think that's where Your Honor and I disagree. I think we've met our three prongs, and now the burden shifts to the state.

Court:     I don't agree.

State:     Your Honor, this system was found to be valid. It was upheld in 2004 by every court in this state. We've had testimony today that it is unchanged from that time. De facto, it's still the exact same as it was. There has been no change. The Supreme Court says unanimously, this is good. I don't have to go any further.

Court:     I'm just giving Mr. Williams and his client his day in court.

State:     I understand.

Court:     The motion is denied.

Defense:     Thank you, Your Honor. Note our objection

*State v. Harrison*, at \*8-10.

The Louisiana Third Circuit Court of Appeal found that the numbers at issue did not show a racial disparity. *Id*. at \*14. Testimony indicated that approximately

13

fourteen percent of Vermilion Parish's population is African-American. *Id*. Since four (the number of African Americans ultimately seated for voir dire) is roughly nineteen percent of twenty-one (the total number of jurors ultimately seated for voir dire), the representation of African-Americans on the panel seated for voir dire actually exceeded the percentage in the parish at large. *Id*. Thus, the court held that while Harrison argued that African-Americans were improperly excluded from the jury pool, he did not provide statistics sufficient to demonstrate the claim. *Id*. To the extent he did provide numbers that show the presence of African-American venire members in the jury pool, the court found that the numbers suggest that a disparity did not occur in this case. *Id*.

The court also addressed Harrison's reference to the fact that three of the four African-American prospective jurors were eliminated via peremptory challenges by the State, pointing out that he did not argue that those challenges were used improperly pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). No *Batston* challenges were made.

The Third Circuit found that Harrison's argument failed under both the second and third prong of *Duren*, *supra*, as he failed to show that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community or that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Harrison has not established that the denial of relief on this claim by the state courts was contrary to or involved an unreasonable application of clearly established federal law. He has not demonstrated unreasonable determination of the facts in light of the evidence. Accordingly, he is not entitled to relief on this issue.

*Conclusion and Recommendation*

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana, on October 17, 2019.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE